Exhibit E

NEWS - ARTISTS - RELEASES - TOURS - IN THE PIT - MUSIC - VIDEO - STREET TEAM - FREE SHIT - RI

# IN THE PIT

ROADRU
RECO

IN THE PIT MENU
» UPLOAD IMAGES
» MESSAGE BOARD
» ASK THE ARTIST
» POLLS
» MAILBAG
» ASK AMY
» FAN ART
» FORUM

FAN ART GALLERY

Ken Coppen's Joey Jordison mask

Return to Gallery >>

<< Previous Pic Next

Copyright 2004 © Roadrunner Records | Design by Sensor Studios

IMAGES
SLIPKNOT
PREVIOUS

Item #: BGAMSK41

**Questions or concerns?**
You can also place an order by phone by calling 1-866-66-SHIRT or outside the US at 1-434-951-0320.
[9am - 12am Monday Thru Thursdays, 9am - 8pm Fridays EST].

E-mail us at customerservice@bravadousa.com.

storefront | view cart | help | account | privacy policy | rate this page

Copyright © 2007 Slipknot

Exhibit F

PRYOR CASHMAN LLP

New York | Los Angeles

410 Park Avenue, New York, NY 10022 Tel: 212-421-4100 Fax: 212-326-0806 www.pryorcashman.com

**Andrew S. Langsam**
Partner

Direct Tel: 212-326-0180
Direct Fax: 212-515-6969
alangsam@pryorcashman.com

May 23, 2007

Kenneth A. Feinswog
6100 Center Drive, Suite 630
Los Angeles, CA 90045

Re: SlipKnot Band and Rubie's Stage Fright Masks
Allegation of Trademark Infringement

Dear Mr. Feinswog:

First, let me sincerely express my personal appreciation for your patience in connection with our response to your earlier correspondence. It certainly was not because Rubie's Costume Co., Inc. lightly considered your client's issues and expressed concern but, rather, strictly due to other pressing legal issues. Indeed, Rubie's has a strict corporate policy of honoring and abiding by the legitimate intellectual property rights of others and a review of their Catalog, referred to by you in your correspondence, should indicate just how many entities are Licensors of their legitimate property rights to Rubie's and how many licenses Rubie's enters into in connection with creating, developing, manufacturing, selling and distributing costumes based on the intellectual property of others.

We have reviewed your allegations, materials from your client's website, and the accused infringing costume components. We do not believe that your client's intellectual property rights, including copyrights, trademark or tradedress rights are infringed. Our client has created, over its 50+ years, many new lines which are inspired by current popular culture and trends. So, for example, review Rubie's Dead City Choppers costumes; which are inspired by the popularity of motorcycles and motorcycle gangs (pages 268-70); Graveyard Reapers costumes, inspired by pirates and zombies (pages 262-3); and Neighborhood Clownz, pages 258-261 (inspired by street b-ball culture, rap music and urban playgrounds), etc. Each of these, just like Rubie's Stage Fright costume line initially draws on and is developed from long established Rubie's masks for inspiration and, yet, are related to current and popular themes. In the case of Rubie's Stage Fright line, the idea of skulls and punk rock bands, complete with skateboarding and "boys behaving badly" were combined. Without admission, it is probable that the creators were aware of various bands such as Slip Knot, but, so, too, were they aware of Kiss and many other LA rock bands of the 80's and 90's. The critical detail, however, is that the expression of this idea and the manifestation of Rubie's Stage Fright line is original to Rubie's. This is made even more

apparent when one appreciates that the Slip Knot band does not have a consistent costume, uniform, nor look. Rather, the members seem to change their appearance frequently, sometimes even within the same performance. It may be, too, that their costumes and uniforms, even their masks, have been purchased or inspired from Rubie's prior works.

As to the guitar logo of Stage Fright, I could not find the corresponding item on the Bravado website for comparison. However, I am assured by Rubie's that its logo was independently created but, in any event, guitars are merely descriptive of heavy metal rock bands so your client's rights are rather limited.

Your client, SlipKnot, was not the first nor the only heavy metal rock band to use leather, chains, blood, masks, etc. in their act. Even if it were, however, SlipKnot has no right of exclusivity to such an unprotectible idea. Only a US Patent can protect, in the US, broad ideas. Without knowledge of your client's developmental facts, we suspect, however, that the SlipKnot group's masks and attire were inspired from other bands or, quite possibly, some of the masks worn were inspired by the masks of other costume companies, possibly even Rubie's prior masks. For its Stage Fright line, Rubie's was inspired by heavy metal bands, in general, and used its existing masks and available costume accessories as a basis, and designed a new set of costumes and masks. There is little doubt that copyright infringement is not present. Stage Fright masks and costumes are not substantially copied from the original features of the SlipKnot band's uniforms, masks, or costumes, to the extent SlipKnot is responsible for any authorship therein.

Relatedly, there is little doubt that there is an absence of likelihood of consumer confusion between the outfits and masks sold by Rubie's under its distinctive Stage Fright trademark and your client's entertainment services provided under its SlipKnot trademark. Furthermore, to the extent you can prove some trade dress claim that extends to the uniforms and masks, i.e., that your decorative features, collectively, identify to the public a distinctive product or service, the features used by Rubie's in its Stage Fright band are decorative, a fair use, and, in any event, there is no likelihood of consumer confusion. Even assuming you actually sell merchandise under the SlipKnot band's name and its mark and that the costumes constitute some collective trade dress right, there is little likelihood of consumer confusion as to source. If you have any evidence of actual consumer confusion, please let me know.

Our review of your website leads us to conclude that your band members may actually be mixing and matching masks, looks, costumes, uniforms, accessories, etc., from performance to performance. Please, if you intend to pursue this matter, identify the specific masks and/or costumes worn by the Slip Knot performers which are allegedly taken by Rubie's Stage Fright costumes and, in addition, provide photos of the same and some representative photos showing any other stage appearances by those same performers. It may be that your client's constant change of its image indicates that the performer's costume is not serving in any trademark

PRYOR CASHMAN LLP

capacity but, rather, the costume is mere decoration and wearing apparel, not subject to intellectual property protection.

In connection with your consideration of this response, kindly refer your attention to Ideal Toy Corp. v. Kenner Products et al., 443 F. Supp. 291 (SDNY 1977) as a representative case dealing with the issues of the relationship of toys to entertainment services, popularity of the entertainment, similarity of themes, and likelihood of consumer confusion.

Among other findings, the Court there received evidence that:

1. The toy industry tries to capitalize on [fads and trends, which often originate in a motion picture, a television show or a "happening."] because children are very well aware of what is current…." 443 F. Supp. At 294.

2. A comprehensive survey was conducted to determine if children and adults, both those that saw the Star Wars movie and those who had not, made an association between the accused infringing toys and the movie.

3. To determine copyright infringement, the finder of fact needs to determine the presence of substantial similarity. 443 F. Supp. at 302. Here, it is pretty easy to conclude that there is no substantial similarity of original, artistic expression. I doubt that your client actually created any of their masks but to the extent they did, Rubie's has a comprehensive library of prior masks and looks from which its Stage Fright masks were developed. In the Star Wars case, that Court determined, "the similarities which exist are not substantial and are sufficiently explained and justified by the evidence concerning the development of the Ideal toys [from its prior toys]. 443 F. Supp. at 303.

4. In the Star Wars case, the intellectual property holder asked the Court (and we anticipate you might ask the same) to consider the examination of the toys together as well as separately and thus demand that the similarities be found in the relationships among the items and their collective display. Here, just as in Ideal v. Kenner, while the accused products are advertised together (actually Rubie's sells many non-accused items under the same Stage Fright mark whereas the three Ideal accused infringing toys were the only toys sold together under the same trademark) the items are, however, individually sold. A conclusion of the absence of substantial similarity is appropriate even though, just like in Ideal, the themes embodied in the accused masks and costumes might be evocative of the Slip Knot band's members. Yet, just like Ideal, themes are not protectible. 443 S.Supp. at 304. Assuming Rubie's knowledge of Slip Knot, which is not conceded at all, there is no liability to intend to capitalize on the fad created by another. See, Ideal v. Kenner, 443 F.Supp. at 304.

5. Finally, the court noted that it considered survey evidence that 31% of adults and 44% of children made a specific "name association" between the accused infringing toys and the Star Wars movie. We doubt that any survey you conduct could even come close to approaching those figures. Nevertheless, the Court acknowledged that any space-related toys would likely conjure up an association with Star Wars and that, however, is no basis for a conclusion that trademark infringement or unfair competition is present. We suspect the identical reasoning would apply to any evidence, other than actual confusion, you may present. A name association, by itself, does not equate to trademark or trade dress infringement. If you have any evidence of confusion or likelihood of confusion, please provide it, now.

As to the Stage Fright Trademark and the Slip Knot "guitar, your client cannot possibly assert exclusive rights to the use of a guitar in connection with a rock group, nor in connection with costumes and masks related to a heavy metal, masked rock group. Rubie's use of its original/created guitar is quite descriptive of a rock group and, indeed, it would be difficult to portray a rock group without the use of a guitar. Here, however, it is clear that there is no infringement since there is an absence of likelihood of confusion.

If, however, you have evidence of actual confusion as to source, please let me know. Rubie's is certainly not attempting to create any such confusion and we can probably work out some marketing accommodations to further ensure against that rare occurrence. However, the standard is not the possibility of confusion but, rather, the US trademark laws and intended to protect against the likelihood of consumer confusion. Many factors come into play when making that determination, including the use by others of similar features.

If you have any questions, of course, let me know.

Very truly yours,

Andrew S. Langsam
Pryor Cashman LLP

ASL/lr

Doc# 519030